[No. G044963. Fourth Dist., Div. Three. Mar. 28, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN McDONALD, Defendant and Appellant.

COUNSEL

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Bradley Weinreb and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### FYBEL, J.—

#### INTRODUCTION

A petition filed in January 2008 alleged John McDonald was a sexually violent predator (SVP) within the meaning of the Sexually Violent Predator Act, Welfare and Institutions Code section 6600 et seq. (SVPA).[1] Following trial in January 2011, the trial court found the allegations of the petition to be true and committed McDonald for an indeterminate term to the custody of the former State Department of Mental Health (DMH) (now the Department of State Hospitals) for treatment in a secured facility. McDonald appeals from the commitment order.

In March 2012, we ordered further proceedings in this matter suspended until the finality of proceedings on remand in *People v. McKee* (2010) 47 Cal.4th 1172 [104 Cal.Rptr.3d 427, 223 P.3d 566] (*McKee I*). Division One of the Fourth Appellate District of the Court of Appeal subsequently issued its opinion in *People v. McKee* (2012) 207 Cal.App.4th 1325 [144 Cal.Rptr.3d 308] (*McKee II*). After the California Supreme Court denied review of *McKee II*, we vacated our order suspending further proceedings and invited the parties to submit supplemental letter briefs addressing the effect of *McKee I* and subsequent authority. Both McDonald and the Attorney General filed supplemental briefs.

McDonald argues that by making a commitment indeterminate and by placing the burden on the SVP to obtain release, the SVPA violates the constitutional right to equal protection. We disagree. We agree with the reasoning and conclusion in *McKee II* that the SVPA's provisions for indeterminate commitment and for placing the burden on the SVP to obtain release do not violate the equal protection rights of the person named in the SVPA petition. In reaching our decision, we join our colleagues in *People v. Landau* (2013) 214 Cal.App.4th 1 [154 Cal.Rptr.3d 1] (*Landau*) and the Courts of Appeal in *People v. McCloud* (2013) 213 Cal.App.4th 1076 [153 Cal.Rptr.3d 10] (*McCloud*) and *People v. McKnight* (2012) 212 Cal.App.4th 860 [151 Cal.Rptr.3d 132] (*McKnight*).

As to McDonald's other arguments, we conclude (1) *McKee II*'s holdings extend to the entire class of suspected SVP's; (2) *McKee II* applied both the correct standard of appellate review and the equal protection strict scrutiny standard; (3) commitment to an indeterminate term under the SVPA does not

---

[1] Further code references are to the Welfare and Institutions Code unless otherwise indicated.

violate due process, is not an ex post facto law, and does not constitute cruel and/or unusual punishment; (4) commitment under the SVPA does not constitute double jeopardy; (5) Proposition 83, the ballot initiative which amended the SVPA to provide for indeterminate periods of commitment, did not violate the single-subject rule; and (6) McDonald's waiver of his right to be present in person at trial was lawful. Accordingly, we affirm the commitment order.

## PROCEDURAL HISTORY AND FACTS

The initial SVPA petition, which sought to commit McDonald for a two-year term, was filed in October 1999. Additional petitions for subsequent two-year commitment terms were filed in January of 2002, 2004, and 2006. Following a trial in August and September 2006, the trial court ordered McDonald's commitment as an SVP for a two-year term ending on February 28, 2008. We affirmed the commitment order in *People v. McDonald* (Apr. 30, 2009, G041020) (nonpub. opn.).

The commitment petition filed in January 2008 sought to commit McDonald for an indeterminate term under the SVPA. In January 2011, McDonald waived his right to a jury trial and his right to be present in person at trial.

The trial on the January 2008 commitment petition was conducted on January 21, 2011. Dawn Starr, Ph.D., and Michael J. Selby, Ph.D., were the only witnesses who testified at trial.

Dr. Starr testified she conducted evaluations of McDonald in 2001, 2009, and 2010. She was able to interview McDonald only for the 2009 evaluation. In preparing the evaluations, Dr. Starr considered McDonald's history of antisocial behavior and sex offenses, and she related that history at trial. In 1978, when he was 16 years of age, McDonald molested a six-year-old girl and was placed with the former California Youth Authority. Shortly after his release in 1982, McDonald met a 10-year-old boy and offered to pay him $15 if he would go to a boat dock with McDonald to help with some work. At the dock, the boy became suspicious and tried to run away. McDonald forced the boy into a shed, pulled down his own pants, and forced the boy to orally copulate him. McDonald told the boy he would not kill him if he promised not to tell. McDonald injected a clear substance into the boy's arm and told the boy, "[t]his will make your penis grow." McDonald released the boy, who was treated later for an infected hematoma of the left elbow.

McDonald had hired two brothers, ages 10 and eight, to work in McDonald's home. In January 1983, the eight-year-old boy overheard McDonald make a lewd comment to the 10-year-old boy about oral copulation. An investigation

revealed that McDonald had engaged in oral copulation with the 10-year-old boy at least three times and had attempted anal penetration. McDonald later told the police he liked boys of 10 or 11 years of age and acknowledged he could not control himself sexually around children.

As a consequence of his actions in 1982 and 1983, McDonald was convicted of a total of 11 felony counts.

Dr. Starr used two actuarial tools, the Static-99R and the Static-2002R, to evaluate McDonald's risk of reoffending. McDonald fell within the highest risk category for both tools. Dr. Starr concluded that McDonald presented a serious and well-founded risk of reoffending in a sexually violent manner. She diagnosed him with "pedophilia, sexually attracted to males and females but noting that it's primarily been males." Dr. Starr also diagnosed McDonald as having antisocial personality disorder and borderline personality disorder. She explained the relevance of that diagnosis by testifying: "The antisocial personality disorder and . . . the borderline personality disorder [are] kind of like putting fuel on the fire of a paraphilic or a pedophilia diagnosis. Because if a person has these kinds of deviant inclinations but they don't have a personality disorder, they might try to keep them in check. But if you have a person who has, for example, difficulty making age-appropriate friendships or romantic relationships, who is immature and when he wants something acts out on it for immediate gratification, then it's going to create an increased likelihood of sexually acting out."

Dr. Selby conducted evaluations of McDonald in 2007 and 2010. Dr. Selby diagnosed McDonald as having "pedophilia, both sexes, nonexclusive type, as well as cognitive disorder not otherwise specified" and "[a]ntisocial personality disorder." Dr. Selby concluded McDonald has "a very strong genetic predisposition for being sexually attracted to children . . . and that because of . . . his limited ability to control the strong urges that come to him, that he has less ability to act to control them and, therefore, would act out much more impulsively without thinking."

McDonald, who was born in 1962, lost all of his hearing in one ear and half of his hearing in the other ear when he was young. He has a history of acting aggressively and of having "seizure disorders," and has been found to have developmental disabilities. Attempts to determine his level of cognitive functioning have been inconclusive.

The trial court found McDonald to be an SVP and, in an order entered on January 21, 2011, ordered him committed for an indeterminate term to the DMH for appropriate treatment in a secured facility. McDonald timely appealed.

DISCUSSION

I.

Equal Protection

A. Background: The SVPA

■ The SVPA provides for involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be an SVP. (*People v. Yartz* (2005) 37 Cal.4th 529, 534 [36 Cal.Rptr.3d 328, 123 P.3d 604].) An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) " '[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action.' " (*People v. Yartz, supra,* at p. 536.)

■ As originally enacted, the SVPA provided for a two-year term of confinement for persons civilly committed as SVP's, subject to subsequent petitions for extended commitment. (Former § 6604.) The Legislature amended the SVPA, effective September 20, 2006, to provide for indeterminate commitment terms for persons determined to be SVP's. (Stats. 2006, ch. 337, §§ 55, 56, 62, pp. 2665–2668.) In the November 2006 general election, California voters approved Proposition 83 (entitled "The Sexual Predator Punishment and Control Act: Jessica's Law"), which also provided for indeterminate terms of commitment for SVP's. (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 1, p. 127; *id.,* §§ 27, 28, subd. (a), p. 137.) Proposition 83 went into effect on November 8, 2006. (Prop. 83, §§ 27, 28, as approved by voters, Gen. Elec. (Nov. 7, 2006); see Cal. Const., art. II, § 10, subd. (a).)[2] Section 6604 now states: "If the court or jury determines that the person is a[n] [SVP], the person shall be committed for an indeterminate term to the custody of the [DMH] for appropriate treatment and confinement in a secure facility . . . ." Thereafter, the committed person can be released without the concurrence or recommendation of the DMH only by petitioning the court for conditional release or unconditional discharge. (§ 6608, subd. (a).)

"[U]nder Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the

[2] We refer to the SVPA, as amended by the Legislature's 2006 amendments and Proposition 83, as the Amended SVPA.

[SVPA]. An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former [SVPA] had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release." (*McKee I, supra*, 47 Cal.4th at pp. 1187–1188.)

## B. *The Opinion in* McKee I

In *McKee I*, the defendant, Richard McKee, asserted his indeterminate commitment under the Amended SVPA violated his constitutional rights to due process and equal protection. (*McKee I, supra*, 47 Cal.4th at p. 1184.) The California Supreme Court rejected McKee's due process claim. (*Id.* at p. 1193.) As to the equal protection claim, the court first addressed whether SVP's are similarly situated to persons found to be mentally disordered offenders (MDO's) who have been committed under the Mentally Disordered Offender Act, Penal Code section 2960 et seq. (*McKee I, supra*, at p. 1203.) The court concluded SVP's and MDO's are similarly situated for equal protection purposes because both " 'have been found, beyond a reasonable doubt, to suffer from mental disorders that render them dangerous to others' " and " 'the purpose of the MDO Act and the SVPA is the same: to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' " (*Ibid.*)

However, the Amended SVPA treats SVP's more harshly than the similarly situated MDO's in that MDO's are not committed for an indeterminate period and cannot be confined beyond the statutory determinate term absent periodic proof beyond a reasonable doubt that the person continues to suffer from a mental disorder and is dangerous. (*McKee I, supra*, 47 Cal.4th at pp. 1201–1202.) "[I]mposing on one group an indefinite commitment and the burden of proving they should not be committed, when the other group is subject to short-term commitment renewable only if the People prove periodically that continuing commitment is justified beyond a reasonable doubt, raises a substantial equal protection question that calls for some justification by the People." (*Id.* at p. 1203.)

Because the terms of commitment for SVP's are substantially less favorable than those for MDO's, the Supreme Court concluded the state must provide justification for the differential treatment. (*McKee I, supra*, 47 Cal.4th

at p. 1203.) The court also found that SVP's are similarly situated to those committed after a finding of not guilty by reason of insanity (NGI's) and that, as with MDO's, "the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Id.* at p. 1207.) The validity of indeterminate commitment under the Amended SVPA would be subject to the strict scrutiny standard of equal protection analysis. (*McKee I, supra*, at pp. 1197–1198, 1208–1209.)

The Supreme Court remanded the matter to the trial court to determine "whether the People, applying the equal protection principles . . . discussed in the present opinion, can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*McKee I, supra*, 47 Cal.4th at pp. 1208–1209.) In so doing, the Supreme Court emphasized two points. First, different classes of persons civilly committed need not be treated identically, and the government should have the opportunity to demonstrate the Amended SVPA's indeterminate commitment provisions "are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate." (*McKee I, supra*, at p. 1210.) Second, "mere disagreement among experts will not suffice to overturn the Proposition 83 amendments." (*Ibid.*) Thus, the trial court was directed to determine only whether the legislative distinctions among classes of persons subject to civil commitment "are reasonable and factually based" and "not whether they are incontrovertible or uncontroversial." (*Id.* at pp. 1210–1211.)

### C. The Opinion in McKee II

On remand from *McKee I*, the trial court conducted a 21-day evidentiary hearing at which the People presented the testimony of eight witnesses and documentary evidence, and McKee presented the testimony of 11 witnesses and documentary evidence. (*McKee II, supra*, 207 Cal.App.4th at pp. 1330, 1332.) The trial court issued a 35-page statement of decision summarizing the testimony and documentary evidence presented at the hearing. (*Id.* at p. 1332.) The trial court found, "the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the [Amended SVPA] was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*Ibid.*) The court confirmed its prior order committing McKee to an indeterminate term. (*Ibid.*)

Division One of the Fourth Appellate District of the Court of Appeal applied a de novo standard of review to "independently determine whether the People presented substantial, factual evidence to support a reasonable

perception that SVP's pose a unique and/or greater danger to society than do MDO's and NGI's, thereby justifying the disparate treatment of SVP's under the [Amended SVPA]." (*McKee II, supra*, 207 Cal.App.4th at p. 1338.) The Court of Appeal concluded: "[T]he People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the [A]mended [SVPA]'s disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). [Citation.] The People have shown that, 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' [Citation.] The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the [A]mended [SVPA] is necessary to further the state's *compelling interests* in public safety and humanely treating the mentally disordered. [Citation.]" (*Id.* at p. 1347, italics added.)

The California Supreme Court denied review of *McKee II* and the opinion is final.

■ We find the reasoning and conclusion of *McKee II* to be persuasive. Although, as McDonald argues, we are not bound by *McKee II* (*Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 [85 Cal.Rptr.3d 506] ["there is no horizontal stare decisis in the California Court of Appeal"]), we agree with its equal protection analysis. (See *Landau, supra*, 214 Cal.App.4th at pp. 47–48; *McCloud, supra*, 213 Cal.App.4th at pp. 1085–1086; *McKnight, supra*, 212 Cal.App.4th at pp. 863–864.)

### D. *McDonald's Challenges to* McKee II

#### 1. *Whether the Equal Protection Claim Is to Be Decided on a Classwide Basis*

In his supplemental letter brief, McDonald challenges the reasoning and applicability of *McKee II* on several grounds. First, McDonald argues he has a due process right to present his own evidence supporting an equal protection claim and "[t]he California Supreme Court did not designate the remand [of *McKee I*] as a test case representing all SVP's who bring an equal protection challenge to an indefinite commitment." We disagree; *McKee I*

plainly expressed the Supreme Court's desire to resolve on a classwide basis the equal protection challenge of all SVP's to indeterminate commitments under the Amended SVPA.

In *McKnight, supra*, 212 Cal.App.4th at pages 863–864, the court stated: "McKnight also argues the Supreme Court intended that the post-*McKee I* remand would resolve the equal protection issue only as applied to Mr. McKee. This, too, is erroneous. *McKee I* recognized that the People could attempt to justify the [Amended SVPA]'s disparate impact in a variety of ways, and that these included showing that SVP's as a class are significantly more likely to reoffend than MDO's or NGI's, showing they pose a greater risk to children (in which case the equal protection analysis would apply only to child predators), or by other, unspecified means. [Citation.] In light of that recognition, the court transferred the multiple 'grant and hold' cases under *McKee I*, including this one, to the Courts of Appeal with directions to vacate their prior opinions and suspend further proceedings until the *McKee I* remand proceedings were final, '*in order to avoid an unnecessary multiplicity of proceedings.*' [Citations.] On remand, *McKee [II]* concluded that differences between *SVP's as a class* and other offenders justify their different treatment under the [Amended SVPA]. It is plain that *McKee II* is not to be restricted to Mr. McKee alone or only to those SVP's convicted of crimes against children, like him, but rather its holding applies to the class of SVP's as a whole."

We agree with *McKnight*. In *McKee I, supra*, 47 Cal.4th at page 1208, the Supreme Court explained the People's burden on remand would be to prove that SVP's "as a class"—and not McKee as an individual—"bear a substantially greater risk to society." As an example of how the People might satisfy this burden, the court stated the People may demonstrate "the inherent nature of the SVP's mental disorder makes recidivism *as a class* significantly more likely." (*Ibid.*, italics added.) The Supreme Court's emphasis on classwide proof, together with its suspension of activity in grant-and-hold cases to avoid an unnecessary multiplicity of proceedings, demonstrates to us the Supreme Court intended the equal protection challenge to the Amended SVPA be resolved on a classwide basis in a single case.

### 2. *Whether the* McKee II *Court Applied the Correct Standard of Review*

Second, McDonald argues the Court of Appeal in *McKee II* did not conduct the required de novo review because the opinion does not mention any evidence presented by the defense and does not discuss credibility or reliability of the People's evidence. A panel of this court in *Landau, supra*, 214 Cal.App.4th at pages 47–48 rejected this argument. We do likewise.

The Court of Appeal in *McKee II* applied the correct standard of review. The court stated, "[a]lthough the trial court heard the testimony of many witnesses and received in evidence many exhibits, the instant constitutional question involved mixed questions of law and fact that are predominantly legal, if not purely legal questions, which are subject to de novo review." (*McKee II, supra*, 207 Cal.App.4th at p. 1338.) The court then explained that its independent review of the evidence required it to determine "whether the People presented substantial evidence to support a reasonable inference or perception that the [SVPA]'s disparate treatment of SVP's is necessary to further compelling state interests." (*Id.* at p. 1339.) That standard is consistent with the applicable standard of review the Supreme Court articulated in *McKee I*: "When a constitutional right, such as the right to liberty from involuntary confinement, is at stake, the usual judicial deference to legislative findings gives way to an exercise of independent judgment of the facts to ascertain whether the legislative body ' "has drawn reasonable inferences based on substantial evidence." ' " (*McKee I, supra*, 47 Cal.4th at p. 1206.)

Several pages of the *McKee II* opinion are devoted to a detailed review of the evidence presented at the remand hearing. The opinion notes disagreements in the expert testimony and concludes substantial evidence supported a reasonable inference or perception that disparate treatment of SVP's was necessary to further the state's compelling interests in public safety and humane treatment of the mentally ill. (*McKee II, supra*, 207 Cal.App.4th at pp. 1339–1347.)

3. *Whether the* McKee II *Court Applied a Strict Scrutiny Standard*

Next, McDonald argues the Court of Appeal in *McKee II* did not apply a strict scrutiny standard to determine whether disparate treatment of SVP's under the Amended SVPA was justified. We again disagree.

In *McKee I, supra*, 47 Cal.4th at pages 1208–1209, the Supreme Court directed the trial court to "apply[] the equal protection principles articulated in [*In re*] *Moye* [(1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097]] and related cases discussed in the present opinion" to determine whether, after the trial, the People "can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." In *In re Moye*, a case involving an equal protection challenge to a civil commitment statute, the California Supreme Court articulated the strict scrutiny standard as follows: "[T]he state must establish both that it has a 'compelling interest' which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest." (*In re Moye, supra*, at p. 465.)

In *McKee II*, the Court of Appeal applied the strict scrutiny standard articulated in *McKee I*. The Court of Appeal independently reviewed the evidence to conclude the People had shown the legislative distinctions in classes of persons subject to civil commitment were reasonable and factually based: The People had shown that recidivism as a class among SVP's is more likely than among MDO's or NGI's, that SVP's pose a greater risk to a particularly vulnerable class of victims, and that SVP's have diagnostic and treatment differences from MDO's and NGI's. (*McKee II, supra*, 207 Cal.App.4th at p. 1347.) The Court of Appeal concluded these distinctions justified disparate treatment, which was "*necessary* to further the state's *compelling interests* in public safety and humanely treating the mentally disordered." (*Ibid.*, italics added.) The strict scrutiny standard was satisfied.

McDonald argues the Court of Appeal erred in *McKee II* by failing to address whether indeterminate commitment was the least restrictive means available to advance a compelling state interest. In *Bernal v. Fainter* (1984) 467 U.S. 216, 219 [81 L.Ed.2d 175, 104 S.Ct. 2312], the United States Supreme Court stated, "[i]n order to withstand strict scrutiny, the law must advance a compelling state interest by the least restrictive means available."

In *McKee II, supra*, 207 Cal.App.4th at page 1349, the Court of Appeal described the quoted passage from *Bernal v. Fainter* as "probable dictum and without citation to any supporting cases." In addition, the *McKee II* court concluded the least-restrictive-means passage was "inapposite to this case and unpersuasive" because *Bernal v. Fainter* involved a suspect class. (*McKee II, supra*, at p. 1349.) The *McKee II* court explained: "We are unaware of any case applying the 'least restrictive means available' requirement to all cases involving disparate treatment of similarly situated classes. On the contrary, our review of equal protection case law shows the two-part test, as discussed in *Moye* and *McKee* [*I*], is the prevailing standard. . . . Therefore, in strict scrutiny cases, the government must show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded the electorate that passed Proposition 83 in 2006 was required to adopt the least restrictive means available (e.g., a two-year or other determinate term of civil commitment) in disparately treating SVP's and furthering the compelling state interests of public safety and humane treatment of the mentally disordered." (*Ibid.*) We agree with *McKee II*'s treatment of the "least restrictive means available" challenge to indeterminate commitment under the Amended SVPA.

4. *Whether the* McKee II *Court Correctly Assessed the Evidence*

McDonald argues the Court of Appeal's assessment of the evidence in *McKee II* was flawed in these ways: (1) "in determining SVP's were more

dangerous [than MDO's and NGI's], *McKee II* considered evidence comparing the recidivism rates of SVP's with recidivism rates of other types of criminals"; (2) "*McKee II* incorrectly limited the recidivism rat[e] to only sex offenses"; (3) "*McKee II* discussed the prosecution's evidence on three separate aspects of SVP's, without discussing or assessing *de novo* McKee's evidence"; and (4) the People's evidence presented at the postremand trial did not support the Court of Appeal's conclusion in *McKee II*. Our review of *McKee II* leads us to disagree with McDonald on each of these points.

As to the first two points, the Court of Appeal in *McKee II* acknowledged the People's evidence did not, by itself, support an inference that SVP's have higher recidivism rates than do MDO's and NGI's. (*McKee II, supra*, 207 Cal.App.4th at p. 1342.) But, the court concluded, the People's evidence showed that the inherent nature of the SVP's mental disorder "makes recidivism as a class significantly more likely than recidivism of sex offenders generally," and such evidence is significant because "the goal of the [SVPA] is specifically to protect society from serious *sexual* offenses." (*Ibid.*, italics added.) In *McKee I*, the Supreme Court stated that treating SVP's differently from MDO's and NGI's may be based on "a reasonable *perception* of the unique dangers that SVP's pose." (*McKee I, supra*, 47 Cal.4th at p. 1210, italics added.) The Court of Appeal in *McKee II* followed *McKee I* by concluding that "[r]egardless of the shortcomings or inadequacy of the evidence on actual sexual recidivism rates," the risk assessment tool evidence "support[ed], by itself, a reasonable inference or *perception* that SVP's pose a higher *risk* of sexual reoffending than do MDO's or NGI's." (*McKee II, supra*, at p. 1342, first italics added.) The rationally based perception that " ' "[s]ex offenders have very high recidivism rates" ' " and have a " ' "higher recidivism rate for their crimes than any other type of violent felon" ' " (*McKee I, supra*, at p. 1206) guided the Legislature in enacting the 2006 amendments to the SVPA and the electorate in passing Proposition 83.

On the third point (*McKee II*'s failure to discuss McKee's evidence), the Court of Appeal's task as defined in *McKee I* was to independently review the evidence to determine whether the People had presented substantial evidence to support disparate treatment of SVP's under the Amended SVPA. (*McKee II, supra*, 207 Cal.App.4th at p. 1339.) In accordance with that task, the Court of Appeal discussed the People's evidence to determine whether it met that standard. The Court of Appeal did not discuss McKee's evidence, but it was not required to do so under either the directions in *McKee I* or the relevant standard of review.

On the fourth point, McDonald argues the People's evidence presented in the postremand trial in *McKee I* was insufficient to support the Court of Appeal's holdings in *McKee II* on the issues of recidivism, trauma to the

victims, and treatment differences. We have discussed the sufficiency of the evidence of recidivism in that case. As to trauma, the Court of Appeal summarized the testimony of two psychologists and a social work professor to support the conclusion that substantial evidence supported "the reasonable perception that the nature of the trauma caused by sex offenses is generally more intense or severe than the trauma caused by nonsex offenses and is sometimes unique to sex offenses." (*McKee II, supra,* 207 Cal.App.4th at p. 1343.) The Court of Appeal summarized the testimony of two psychiatrists and four psychologists to support the conclusion that substantial evidence supported "a reasonable perception by the electorate that SVP's have significantly different diagnoses from those of MDO's and NGI's, and that their respective treatment plans, compliance, and success rates are likewise significantly different." (*Id.* at p. 1347.)

In arguing the Court of Appeal's assessment of the evidence in *McKee II* was flawed, McDonald misreads the Supreme Court's directions in *McKee I.* The Supreme Court did not require the People to produce uncontradicted evidence compelling a finding that, as an indisputable fact, SVP's pose a substantially greater risk to society than do MDO's or NGI's. The Supreme Court, recognizing the importance of deferring to the Legislature or to the voters, framed the trial court's task on remand as determining whether the legislative distinctions among SVP's, MDO's, and NGI's are "reasonable and factually based," and "not whether they are incontrovertible or uncontroversial." (*McKee I, supra,* 47 Cal.4th at pp. 1210–1211.) Even if McKee had produced testimony contradicting the People's witnesses in the postremand trial, "mere disagreement among experts will not suffice to overturn the Proposition 83 amendments." (*Id.* at p. 1210.)

## II.

## Due Process, Ex Post Facto, and Cruel and/or Unusual Punishment

■ McDonald argues that his indeterminate commitment term under the Amended SVPA violated the due process and ex post facto clauses of the United States and California Constitutions and constitutes cruel and/or unusual punishment. In *McKee I, supra,* 47 Cal.4th at pages 1193, 1195, the California Supreme Court held the Amended SVPA does not violate the due process or ex post facto clauses of the federal and state Constitutions. (See *Landau, supra,* 214 Cal.App.4th at p. 45; *McCloud, supra,* 213 Cal.App.4th at p. 1085.) McDonald acknowledges we are bound by *McKee I,* and makes his due process and ex post facto arguments to preserve his right to seek relief in federal court.

The United States Constitution Eighth Amendment's cruel and unusual punishment clause protects those convicted of crimes from being physically punished by barbarous methods and ensures the penal measures embody concepts of dignity, humanity, and decency. (*Estelle v. Gamble* (1976) 429 U.S. 97, 102–103 [50 L.Ed.2d 251, 97 S.Ct. 285].) Article I, section 17 of the California Constitution prohibits infliction of "[c]ruel or unusual punishment."

Although *McKee I* did not address a cruel and/or unusual punishment claim, it concluded the Amended SVPA was not punitive. (*McKee I, supra*, 47 Cal.4th at pp. 1194–1195.) In *Kansas v. Hendricks* (1997) 521 U.S. 346, 363 [138 L.Ed.2d 501, 117 S.Ct. 2072], the Supreme Court rejected the argument the Kansas SVP act was punitive in effect by providing for potentially indefinite confinement. A state's intent to restrict the freedom of the dangerously mentally ill is "a legitimate nonpunitive governmental objective." (*Kansas v. Hendricks, supra*, at p. 363.)

■ As the SVPA is not punitive, it does not violate the constitutional prohibition of cruel and/or unusual punishment.

## III.

## Double Jeopardy

■ McDonald argues his indeterminate commitment under the Amended SVPA violates the double jeopardy prohibitions of the federal and state Constitutions. Both the federal and the state Constitutions prohibit placing a person in jeopardy twice for the same offense. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) The double jeopardy clause protects only against "the imposition of multiple *criminal* punishments for the same offense." (*Hudson v. United States* (1997) 522 U.S. 93, 98–99 [139 L.Ed.2d 450, 118 S.Ct. 488].)

Because the Amended SVPA does not inflict punishment (*McKee I, supra*, 47 Cal.4th at pp. 1194–1195), McDonald's indeterminate commitment under the Amended SVPA does not constitute double jeopardy. (See *Landau, supra*, 214 Cal.App.4th at p. 45 ["we find that appellant's commitment under the SVPA does not violate double jeopardy"].)

## IV.

## Single-subject Rule

McDonald argues Proposition 83 violated the single-subject rule for ballot initiatives set forth in article II, section 8, subdivision (d) of the California

Constitution, which provides, "[a]n initiative measure embracing more than one subject may not be submitted to the electors or have any effect." Proposition 83 violated the single-subject rule, he argues, by including provisions modifying civil, criminal, and regulatory matters, "which only had a broad and amorphous theme of dealing with sex offenders."

 The same argument was rejected by the Court of Appeal in *People v. Kisling* (2011) 199 Cal.App.4th 687, 693–695 [131 Cal.Rptr.3d 869] (*Kisling*). The *Kisling* court explained a ballot measure with varied collateral effects does not violate the single-subject rule if all parts of the ballot measure are reasonably germane to each other and to the general purpose or object of the measure. (*Id.* at p. 693.) The court noted the California Supreme Court has upheld ballot measures that fairly disclose a reasonable and commonsense relationship among the measure components in furtherance of a common purpose. (*Id.* at pp. 693–694, citing *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 575 [117 Cal.Rptr.2d 168, 41 P.3d 3].) Applying those principles to Proposition 83, the *Kisling* court concluded: "Here, Proposition 83 stated that California must monitor sex offenders, provide adequate penalties for and safeguards against sex offenders, strengthen and improve 'laws that punish aggravated sexual assault, habitual sex offenders, and child molesters,' and strengthen and improve 'laws that provide for the commitment and control of sexually violent predators.' [Citation.] The initiative's stated purpose was ' "to strengthen and improve the laws that punish and control sexual offenders." ' [Citation.] All of the provisions in Proposition 83 related to its stated purpose of strengthening laws that punish and control dangerous sexual predators. [Citation.] As can be seen in *Manduley, supra*, 27 Cal.4th at page 574, an initiative does not violate the single-subject rule merely because it amends two statutory schemes. [Citation.] Because the provisions of Proposition 83 were reasonably related to a common purpose and furthered that purpose, Proposition 83 did not violate the single-subject rule. [Citation.]" (*Kisling, supra*, at p. 694.)

We agree with *Kisling* and also conclude Proposition 83 did not violate the single-subject rule.

## V.

### Waiver of Right to Be Present at Trial

McDonald orally waived his right to be present at the trial of the January 2008 commitment petition. The trial court found the waiver to have been made "knowingly, intelligently, freely, and voluntarily" and excused

McDonald from appearing. On appeal, he argues an oral waiver was inadequate and a signed written waiver was necessary to satisfy Penal Code section 977, subdivision (b) (section 977(b)) and the due process clauses of the federal and state Constitutions.

■ Penal Code section 977(b) provides that an accused's right to be present during the trial of a felony charge can be waived only by a written waiver executed by the accused in open court. Section 977(b) does not apply to commitment proceedings under the SVPA because they are not felony prosecutions, but special proceedings of a civil nature. (*People v. Yartz, supra,* 37 Cal.4th at pp. 536–537.) The SVPA grants the committed person "the right to be present" at the commitment proceeding (§ 6605, subd. (d)), but does not require a waiver of that right to be in writing. Even if section 977(b) did apply to SVPA commitment trials, the trial court's error in not securing a written waiver from McDonald was harmless because "the record makes clear that defendant voluntarily waived his right to be present, if only orally." (*People v. Huggins* (2006) 38 Cal.4th 175, 203 [41 Cal.Rptr.3d 593, 131 P.3d 995].)

A defendant in a proceeding under the SVPA is entitled to due process protection because civil commitment involves a significant deprivation of liberty. (*People v. Otto* (2001) 26 Cal.4th 200, 209 [109 Cal.Rptr.2d 327, 26 P.3d 1061], citing *Foucha v. Louisiana* (1992) 504 U.S. 71, 80 [118 L.Ed.2d 437, 112 S.Ct. 1780].) A criminal defendant has a due process right to be present at trial. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; *Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 107 S.Ct. 2658]; *United States v. Gagnon* (1985) 470 U.S. 522, 526 [84 L.Ed.2d 486, 105 S.Ct. 1482].) An SVPA defendant has a statutory right to be present at trial (§ 6605, subd. (d)), and, we will assume, has the same due process right as a criminal defendant to be present at trial. McDonald orally waived that right. After questioning McDonald, the trial court found he knowingly and voluntarily waived his right to be present at trial.

Federal due process does not bar a defendant from waiving the right to be present at trial. (*People v. Breaux* (1991) 1 Cal.4th 281, 305 [3 Cal.Rptr.2d 81, 821 P.2d 585].) McDonald has cited no authority for the proposition the due process clause of either the federal or the state Constitution requires a written waiver of the right to be present at trial. To the extent due process required a written waiver, we find any error to be harmless beyond a reasonable doubt because, as we have stated, there is no question that McDonald voluntarily made an oral waiver of his right to be present at trial.

### DISPOSITION

The January 21, 2011 order of commitment is affirmed.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 2013, S210418.