Filed 11/20/13  P. v. Hauer CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039091 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 211501) |
| v. | |
| DWIGHT HAUER, | |
| Defendant and Appellant. | |

Defendant Dwight Hauer appeals his commitment to the State Department of State Hospitals (Department) for an indeterminate term following the trial court's determination, after a court trial, that defendant is a sexually violent predator (SVP) for purposes of the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.; SVPA).[1]  On appeal, defendant claims: (1) the petition for commitment should have been dismissed because it was based on evaluations conducted pursuant to an allegedly invalid assessment protocol promulgated by the Department[2] in 2009 (2009 Protocol), in violation of section 6601, subdivision (c); (2) the 2009 Protocol violates defendant's substantive due process rights; (3) the SVPA's conditional release process denies defendant equal protection; and (4) the SVPA's indeterminate commitment scheme violates various constitutional protections, including equal protection, due process,

_____

[1]  Unspecified statutory references are to the Welfare and Institutions Code.

[2]  The 2009 Protocol was developed by the Department of Mental Health, the predecessor to the State Department of State Hospitals.

double jeopardy, and the prohibition of ex post facto laws. For the reasons stated here, we will affirm the trial court's judgment.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Because defendant does not challenge the sufficiency of the evidence to support the lower court's SVP determination, we will briefly summarize the factual basis for the SVP determination before discussing the procedural background in greater detail.

In 1975 and 1981, defendant was convicted of committing lewd and lascivious acts with a total of three boys under the age of 14, in violation of Penal Code section 288. In 1988, defendant was sentenced to a 40-year prison term after being convicted of committing several sex offenses with three additional boys. In February 2010, prior to defendant's release on parole for the 1988 convictions (which had been extended by use of a 45-day hold (§ 6601.3, subd. (a)) not at issue on appeal), the District Attorney for the County of Santa Clara petitioned to commit defendant as an SVP. In support of the petition, the People included evaluations prepared by Dr. Craig Updegrove and Dr. Michael Musacco in February 2010.

In May 2010, defendant filed a motion to dismiss the petition, arguing that the 2009 Protocol was not a "standardized assessment protocol" as required by section 6601, subdivision (c), because it is insufficiently specific regarding the proper procedures to follow and tests to use when evaluating potential SVP's. The trial court denied defendant's motion to dismiss and, after finding probable cause to believe that defendant qualified as an SVP, set a trial date.

The court trial ultimately took place in November 2012. Defendant waived his right to a jury trial and his right to be personally present. At the trial, the court heard testimony from Dr. Updegrove and Dr. Musacco that defendant was likely, as a result of a mental disorder (pedophilia), to engage in sexually violent predatory criminal behavior if released as a result of that mental disorder. After the close of evidence, the trial court

determined defendant was an SVP and committed him to the Department "for an indeterminate term . . . for appropriate treatment and confinement in a secure facility."

## II. DISCUSSION

### A. SEXUALLY VIOLENT PREDATOR ACT

A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) To obtain an SVP determination, the People must petition the superior court in the county where the potential SVP was previously convicted of a qualifying sexually violent offense. (§ 6601, subds. (d), (i).) The petition must be accompanied by evaluations prepared by "two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist," who "concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody . . . ." (§ 6601, subd. (d).) These evaluations must be conducted "in accordance with a standardized assessment protocol," which "shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders." (*Id.*, subd. (c).)

Once a petition is filed, the superior court holds a hearing to determine whether there is probable cause to believe the potential SVP "is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) The potential SVP is entitled to appointed counsel for the probable cause hearing. (*Ibid.*) If the trial court finds probable cause, the matter proceeds to trial. (*Ibid.*) At trial, the potential SVP is afforded a number of rights, including the rights to counsel, a jury trial, appointment of experts, review of records, and proof beyond a reasonable doubt. (§§ 6603, subd. (a), 6604.) Further, unless a jury trial is waived by the potential SVP, the jury verdict must be unanimous. (§ 6603, subds. (e), (f).)

If the trier of fact determines the individual is an SVP, the individual is committed for an indeterminate term to the custody of the Department "for appropriate treatment and confinement . . . ." (§ 6604.) This indeterminate term of confinement, which forms the basis for defendant's equal protection challenge to the SVPA, is the result of Proposition 83, a citizen initiative approved by the voters in November 2006. Before Proposition 83, the commitment term for an SVP was two years, which could be renewed only if the People proved beyond a reasonable doubt that an individual still met the definition of an SVP. (Former § 6604; *People v. McKee* (2010) 47 Cal.4th 1172, 1183 (*McKee I*).)

After commitment, the SVPA provides methods of securing release from confinement. If the Department determines "the person's condition has so changed that the person no longer meets the definition of a sexually violent predator," the director of the Department must authorize the SVP to petition the court for release. (§ 6605, subd. (b)(1).) When an SVP petitions with the authorization of the Department, at the release hearing the People bear the burden of proof beyond a reasonable doubt to show the individual still meets the definition of an SVP. (§ 6605, subd. (d).)

An SVP may also petition the superior court for conditional release *without* the consent of the Department. (§ 6608, subd. (a).) "[W]henever possible," the court should review those petitions filed without the consent of the Department to determine whether they are "based upon frivolous grounds and, if so, shall deny the petition without a hearing." (*Ibid.*) If the petition is not found frivolous, the court must hold a hearing where the SVP bears the burden of showing by a preponderance of the evidence that he or she no longer meets the definition of an SVP. (§ 6608, subd. (i).)

**B.    CHALLENGES TO THE 2009 PROTOCOL**

Dr. Craig Updegrove and Dr. Michael Musacco each prepared an evaluation of defendant in 2010, which accompanied the petition for SVP determination.

### 1. Section 6601, Subdivision (c)

Defendant filed a motion to dismiss the petition in the trial court, arguing that the evaluations supporting the petition for his commitment were based on the 2009 Protocol, which he claimed was not a "standardized assessment protocol" as required by section 6601, subdivision (c). Defendant renews this argument on appeal. Because we find no material error in the doctors' use of the 2009 Protocol regardless of its adequacy, we will not address the merits of the challenge to the validity of the protocol.

In criminal proceedings, infirmities in preliminary hearing procedures that are not jurisdictional in the fundamental sense do not compel reversal on direct appeal absent a showing of prejudice. (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529.) This rule has been applied to civil commitment proceedings pursuant to the SVPA, including challenges to evaluation protocols. (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 652 (*Reilly*) [requiring "material error" in evaluation process]; see also *People v. Hayes* (2006) 137 Cal.App.4th 34, 50-51.) In *Reilly, supra,* the Supreme Court clarified that prejudice must be shown even when procedures are attacked collaterally through extraordinary writ. (*Id.* at pp. 653-655 [disapproving *In re Ronje* (2009) 179 Cal.App.4th 509].) The use of the 2009 Protocol does not result in a lack of fundamental jurisdiction of the trial court to hear the petition. (*People v. Landau* (2013) 214 Cal.App.4th 1, 17.) Thus, defendant must show that the use of the 2009 Protocol constituted material error to secure reversal on this ground. (*Reilly, supra*, 57 Cal.4th at p. 655.)

The SVPA, as applied in defendant's case, precludes a showing of material error. The People's petition was accompanied by evaluations prepared by two doctors meeting the statutory criteria for evaluators who concurred that defendant "has a diagnosed mental disorder so that he . . . is likely to engage in acts of sexual violence without appropriate treatment and custody . . . ." (§ 6601, subd. (d).) This concurrence, however, did not establish defendant as an SVP. Instead, the evaluations simply provided the trial court with a basis to determine whether there was probable cause to believe defendant was

"likely to engage in sexually violent predatory criminal behavior upon his . . . release." (§ 6602, subd. (a).) Once the court was satisfied that probable cause existed, the SVPA compelled the court to set a trial to determine whether defendant was, "by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (*Ibid.*)

At the court trial that followed the probable cause determination, it was the People's burden to prove, beyond a reasonable doubt, that defendant met the statutory definition of an SVP. (§ 6604.) The SVPA afforded defendant procedural rights, including the right to appointed counsel and to retain experts to assist his defense. (§ 6603, subd. (a).) Defendant also had the opportunity to cross-examine both Dr. Updegrove and Dr. Musacco regarding the foundation for their opinions that he met the definition of an SVP. At the close of these proceedings, the court determined defendant was an SVP. Because the evaluations were only the first step in the process of adjudicating defendant an SVP and did not conclusively establish his status, defendant cannot show prejudice.

### 2. Substantive Due Process

Defendant asserts a substantive due process argument, claiming that the use of the 2009 Protocol made his commitment arbitrary and unconstitutional. We disagree.

Though an SVP commitment clearly impacts a fundamental liberty interest, our Supreme Court has noted that "the state may involuntarily commit persons who, as the result of mental impairment, are unable to care for themselves or are dangerous to others. Under these circumstances, the state's interest in providing treatment and protecting the public prevails over the individual's interest in being free from compulsory confinement." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1151 (*Hubbart*).) As detailed above, regardless of which protocol the doctors used when preparing their evaluations, those evaluations were but the first step in the People's long road to establish beyond a reasonable doubt that defendant was an SVP. Because this SVP commitment

scheme has already been tested and upheld against a substantive due process claim, (*Hubbart, supra,* at pp. 1151-1167), defendant's argument is without merit.

Further, defendant's reliance on *Foucha v. Louisiana* (1992) 504 U.S. 71 (*Foucha*), is misplaced. In *Foucha*, the United States Supreme Court's reversal of a civil commitment did not arise from any constitutional infirmity in civil commitment schemes, like the SVPA, that permit commitment after a showing that an individual is a danger to society as a result of a mental disorder. (*Id.* at p. 80.) Rather, the Court in *Foucha* reversed the commitment order because the state was attempting to continue the confinement of an individual who had previously been determined not guilty by reason of insanity solely based on the presence of an antisocial personality disorder without a showing of continued insanity. (*Id.* at pp. 77-79.) In reversing the commitment order, the court found that "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (*Id.* at p. 79.) Turning to defendant's SVP commitment, the sole reason for his commitment was his mental disorder that made him likely to commit sexually violent predatory criminal behavior if released. Because the nature of defendant's commitment was reasonably related to the purpose for which he was committed, *Foucha* is distinguishable.

C.     EQUAL PROTECTION CHALLENGE TO SECTION 6608 RELEASE PROCEDURES

Section 6608 governs petitions for conditional release filed by SVP's without the consent of the Department. Courts must review and dismiss any section 6608 petition that is frivolous. (§ 6608, subd. (a).) Even if the trial court does not find a petition frivolous, a hearing on the petition cannot occur until at least one year after the date of the order of commitment. (§ 6608, subd. (c).) Defendant argues section 6608 denies SVP's equal protection in violation of the Fourteenth Amendment to the United States Constitution, and article I, section 7 of the California Constitution because similarly situated civil committees (e.g., mentally disordered offenders (MDO's) and those found not guilty by reason of insanity (NGI's)) do not face similar procedural hurdles. The

People respond that this challenge is unripe because defendant's appeal arises from his initial commitment as an SVP rather than a determination made under section 6608.

It is a "well-settled rule that courts should 'avoid advisory opinions on abstract propositions of law. [Citations.]' [Citation.]" (*People v. Ybarra* (1988) 206 Cal.App.3d 546, 549; *People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1700.)  To prevent advisory opinions, courts must wait until a case " 'has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171.)  Here, the record does not reflect any action taken by defendant pursuant to section 6608.  As such, we find his equal protection challenge to section 6608 unripe.

Our decision is unaffected by *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1086-1088 (*McCloud*), where the First District remanded an appeal from an SVP commitment determination "so that both parties may fully brief and argue McCloud's claim that section 6608, subdivision (a), violates the equal protection clause." (*McCloud, supra,* at p. 1088.)  Defendant's reliance on *McCloud* is misplaced because the decision contains no discussion of ripeness, suggesting that the issue was not before the court. Further, the First District did not decide the matter on the merits, instead stating the argument was not "wholly without merit" and remanding the question for further briefing.  (*Ibid.*)  Thus, even if we were bound by *McCloud*, it would not control the outcome of this case.

## D.    EQUAL PROTECTION CHALLENGE TO SVPA INDETERMINATE COMMITMENT

Defendant also challenges the SVPA's indeterminate commitment scheme, arguing SVP's are denied equal protection because MDO's and NGI's are only subject to renewable one and two-year terms, respectively.  (Pen. Code, §§ 2972, subd. (c) [MDO's held past the maximum possible term of confinement for commitment offense subject to renewable one-year terms]; 1026.5, subd. (b)(8) [NGI's held past the maximum possible

term of confinement for commitment offense subject to renewable two-year terms].) As they addressed an identical challenge, we will begin by summarizing the two *McKee* opinions. (*McKee I, supra,* 47 Cal.4th 1172; *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*).)

### 1. *McKee I* and *McKee II*

Equal protection analysis begins with the premise that similarly situated groups of individuals should be treated equally. (*In re Eric J.* (1979) 25 Cal.3d 522, 531.) When laws treat similarly situated individuals differently, there must be "some justification for this differential treatment." (*McKee I, supra,* 47 Cal.4th at p. 1203.) In *McKee I*, the Supreme Court concluded that SVP's are similarly situated to MDO's and NGI's for purposes of determining whether the indeterminate commitment compelled by the SVPA denies SVP's equal protection. (*Id.* at pp. 1203, 1207.) After analyzing prior decisions of both the state and federal Supreme Courts, the Court decided that the indeterminate commitment scheme was subject to strict scrutiny and remanded the matter to the trial court "to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208-1209.) As formulated by the Court in *McKee I*, this standard required the People to show that the state " ' has a "compelling interest" which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest.' " (*Id.* at p. 1198, quoting *In re Moye* (1978) 22 Cal.3d 457, 465-466.) The court concluded that to pass constitutional muster, the People would have to show "that, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*McKee I, supra,* at p. 1208.)

On remand from the Supreme Court, the trial court held a 21-day evidentiary hearing where the court heard testimony from numerous witnesses and reviewed

documentary evidence. (*McKee II, supra,* 207 Cal.App.4th at pp. 1330, 1332.) The trial court issued a 35-page statement of decision "finding the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the [SVPA] was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*Id.* at p. 1332.)

After the trial court's decision on remand, McKee appealed again, asserting that the People failed to provide adequate evidence to pass strict scrutiny. In *McKee II,* Division One of the Fourth Appellate District independently reviewed the evidence presented at the 21-day evidentiary hearing and held that substantial evidence supported the SVPA's "disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released)." (*McKee II, supra,* at p. 1347.) In holding that the disparate treatment of SVP's passed strict scrutiny, the *McKee II* court focused on the following factors to support its conclusion that SVP's as a class "bear a substantially greater risk to society" (*McKee I, supra,* at p. 1208) such that disparate treatment was justified: (1) greater likelihood of recidivism; (2) greater risk to vulnerable classes of victims; and (3) differences in diagnoses leading to varied treatment, compliance, and success rates. (*McKee II, supra,* at pp. 1340-1347.)

Regarding recidivism, the *McKee II* court cited evidence presented by the People showing that SVP's as a class are "significantly more likely" to recidivate than MDO's or NGI's. (*McKee II, supra,* at p. 1340.) Though the various studies reviewed by the court contained a range of recidivism rates, the studies, along with testimony from professionals who specialize in the treatment of sex offenders, contained evidence that raised "a reasonable inference or perception that SVP's pose a higher risk of sexual reoffending than do MDO's or NGI's." (*Id.* at p. 1342, italics omitted.)

The court then discussed evidence showing that "victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses." (*McKee II, supra,* at p. 1342.) In support, the court cited the testimony of Dr. Robert Geffner, a

psychologist, who opined that "[s]exual trauma differs qualitatively from other traumas because of its intrusiveness and long-lasting effects." (*Ibid.*) Dr. Geffner also explained that sexual trauma adversely affects victims in numerous ways: "psychologically, physiologically, socially, and neuropsychologically." (*Ibid.*) From this testimony, as well as that from other experts, the court concluded "there [was] substantial evidence to support a reasonable perception by the electorate, as a legislative body, that the harm caused by child sexual abuse and adult sexual assault is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection." (*Id.* at pp. 1343-1344.)

The final category of evidence analyzed by the appellate court in *McKee II* involved "evidence showing SVP's are significantly different from MDO's and NGI's diagnostically and in treatment." (*McKee II, supra,* at p. 1344.) From a diagnostic perspective, the court pointed to testimony of Dr. David Fennell, a psychiatrist and chief of forensics at Atascadero State Hospital, that while 90 percent of MDO and NGI patients suffer from some form of psychosis, the rate of psychosis in SVP's is only between one and three percent. (*Ibid.*) While SVP's had comparatively low psychosis rates, according to the testimonial evidence "66 percent of SVP's suffer from pedophilia and 33 percent have another paraphilia." (*Ibid.*) These differing diagnoses affected both the types of treatment plans afforded to the different classes of civil committees as well as treatment compliance and success rates. Dr. Fennell explained that psychotropic medications are available that assist in stabilizing individuals with psychosis, leading to compliance rates of approximately two-thirds of MDO's and NGI's. (*Id.* at pp. 1344-1345.)

Unlike psychosis, where medication is a key aspect to treatment plans, treatment for SVP's focuses on "giving them the tools to limit their risk of sexually reoffending." (*McKee II, supra,* 207 Cal.App.4th at p. 1345.) This change in focus reflects the comparative ineffectiveness of medications to treat pedophilia and paraphilias, which

"may decrease their sexual arousal, but not their deviant sexual interests." (*Id.* at p. 1346.) As for compliance rates, "only about 25 percent of SVP's participate in treatment." (*Id.* at p. 1345.) From the foregoing, the court concluded "there is substantial evidence to support a reasonable perception by the electorate that SVP's have significantly different diagnoses from those of MDO's and NGI's, and that their respective treatment plans, compliance, and success rates are likewise significantly different." (*Id.* at p. 1347.)

Based on the foregoing evidence, the court concluded the SVPA "does not violate McKee's constitutional equal protection rights." (*McKee II, supra,* at p. 1348.)

### 2. Application of *McKee II* to Defendant's Appeal

Defendant argues that we are "free to reach a different conclusion" than the court in *McKee II* because it was decided by another appellate district. While this is technically true, (*People v. Kim* (2011) 193 Cal.App.4th 836, 847), we find the reasoning and conclusion reached in *McKee II* persuasive. The court there independently reviewed voluminous evidence obtained as a result of an evidentiary hearing ordered by the Supreme Court and determined that the People had met their burden of showing the disparate treatment of SVP's was necessary to further the compelling interest of public safety. (*McKee II, supra,* at pp. 1348-1349.) Here, defendant neither presents new evidence nor suggests he would be able to present evidence compelling an alternative conclusion.

The unique procedural nature of the *McKee I* remand strengthens the persuasiveness of *McKee II*. As discussed in *People v. McDonald* (2013) 214 Cal.App.4th 1367 (*McDonald*), the Supreme Court's remand for an evidentiary hearing represented a "desire to resolve *on a classwide basis* the equal protection challenge of *all* SVP's to indeterminate commitments under the Amended SVPA." (*Id.* at pp. 1377-1378, italics added; see also *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864 ["It is plain that *McKee II* is not to be restricted to Mr. McKee alone or only to those SVP's

convicted of crimes against children, like him, but rather its holding applies to the class of SVP's as a whole."].)  The *McDonald* court points to the remand language in *McKee I,* where "the Supreme Court explained the People's burden on remand would be to prove that SVP's 'as a class' -and not McKee as an individual -'bear a substantially greater risk to society.' " (*McDonald, supra,* at p. 1378, quoting *McKee I*, *supra,* 47 Cal.4th at p. 1208.)  In addition to this language, the *McKee I* court's decision to grant petitions for review in multiple appeals raising the equal protection issue and then stay proceedings until resolution of *McKee II* suggests the Supreme Court intended *McKee II* to conclusively resolve this issue.  (*McDonald, supra,* at p. 1378.)

E.      OTHER CONSTITUTIONAL CHALLENGES TO INDETERMINATE COMMITMENT

In addition to his equal protection arguments, defendant argues the SVPA's indeterminate commitment scheme violates the due process, ex post facto, and double jeopardy clauses of the United States Constitution.  In *McKee I*, the Supreme Court considered and rejected identical due process and ex post facto arguments.  (*McKee I, supra,* 47 Cal.4th at pp. 1191-1193 [due process], 1193-1195 [ex post facto].)  We are, of course, bound by the Court's decision in *McKee I*.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

As for defendant's double jeopardy argument, in deciding the SVPA did not violate the ex post facto clause, the Court stated in *McKee I* that the amendments making the term of commitment indeterminate "do not make the Act punitive . . . ." (*McKee I, supra,* 47 Cal.4th at p. 1195.)  Because the Supreme Court's determination that the SVPA is not punitive "removes an essential prerequisite" of a double jeopardy claim, defendant's argument is without merit.  (*Kansas v. Hendricks* (1997) 521 U.S. 346, 369; see also *McDonald, supra,* 214 Cal.App.4th at p. 1383.)

### III. DISPOSITION

Defendant's commitment order is affirmed.

_____
Grover, J.

**WE CONCUR:**

_____
Premo, Acting P.J.

_____
Mihara, J.