Filed 6/12/13  P. v. Warren CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D061229 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. MH101770) |
| ANDREW DANG WARREN, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Kerry Wells, Judge.  Affirmed.


Rudy Kraft for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Lilia E. Garcia, Lynne McGinnis, Felicity Senoski, Deputy Attorneys General for the Plaintiff and Respondent.

Andrew Dang Warren appeals an order involuntarily committing him for an indeterminate term to the custody of the California Department of Mental Health (DMH) after a jury found him to be a sexually violent predator (SVP) under the amended Sexually Violent Predators Act (SVPA) within the meaning of Welfare and Institutions Code[1] section 6600 et seq. Warren contends the order must be reversed because (1) the court erroneously denied him an opportunity to question the prosecution's psychological experts in order to reveal their bias because they overdiagnosed SVP's; (2) the court erroneously refused to instruct the jury with a pinpoint instruction modifying CALCRIM No. 3454; (3) the SVPA violates state and federal due process guarantees by imposing an indeterminate term on SVP's and requiring them to prove they no longer qualify as SVP's; (4) the SVPA violates equal protection guarantees under the state and federal Constitutions; and (5) the SVPA violates ex post facto and double jeopardy state and federal constitutional prohibitions. We affirm the order of commitment.

FACTUAL BACKGROUND

In June 2010, the People filed an amended petition seeking to commit Warren as an SVP for an indeterminate term. At trial, the parties stipulated that in 1999, Warren was convicted of two counts of lewd and lascivious acts on a child under the age of 14, for which he was sentenced to a determinate prison term of 8 years. In 2000, Warren was convicted of two counts of second degree child molestation, for which he was sentenced

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

to 12 years in prison. Following a December 2011 trial, a jury found Warren qualified as an SVP, and the court committed him to the DMH for an indeterminate term.

DISCUSSION

I.

*Admissibility of Evidence Claim*

Challenging the court's decision to exclude comparative statistics from two of his evaluating psychologists, Warren contends: "Since the objective here was to determine whether [he] was an SVP, the relevant question was whether the evaluators had a tendency to find persons to be an SVP more often then [*sic*] they actually were, less often then [*sic*] they actually were, or about as often as they actually were. Thus, [his] desire to compare the rates of positive findings for each of the testifying prosecution experts to the actual rates at which people are found to be SVPs is exactly the comparison that was necessary in order to evaluate whether the individual experts were biased." Warren contends the court's failure to admit this evidence prejudiced him "because it allowed the prosecution's expert to inaccurately appear as unbiased and highly qualified experts [*sic*], when in fact they were witnesses with a strong bias and propensity to testify against persons alleged to be SVPs."

A. *Background*

Two psychologists testified for the prosecution. Craig Updegrove, Ph.D. diagnosed Warren with pedophilia, opining Warren is a danger to the health and safety of others because he likely will engage in sexually violent predatory criminal behavior

3

absent appropriate treatment in custody. Dr. Updegrove testified that approximately three percent of individuals released from California prisons since 1996 were found by at least one psychologist to meet the criteria for registration as a sex offender. In subsequent evaluations, those criminals' conviction records were analyzed to determine if they qualified as SVP candidates. Having evaluated approximately 825 individuals, Dr. Updegrove calculated that approximately 16 percent of those he had evaluated qualified as sex offenders. But he noted that starting in 2006, following a change in the law, only 8 or 9 percent of those he evaluated qualified as sex offenders.

On Dr. Updegrove's cross-examination, this extended exchange regarding those statistics occurred:

"[Defense counsel:] Of those who received full evaluations, are you aware—do you have any statistics about how many ultimately are found to meet criteria as a matter of law?

"[Prosecutor:] Your Honor, I'm going to object as relevance. I think that's a jury determination.

"The Court: Sustained.

"[Defense counsel:] Let me ask it this way: You told us about 8 or 9 percent of your evaluations since 2006 have yielded a result of positive for SVP criteria. Correct?

"[Dr. Updegrove:] Yes.

"[Defense counsel:] In other words, positive for criteria meaning you would give the opinion that the person qualifies for SVP.

"[Dr. Updegrove:] Yes.

4

"[Defense counsel:] And that 8 or 9 percent overstates about three times the statistics on people that are actually found to meet criteria; correct?

"[Prosecutor:] Your Honor, object again. Relevance. I'm not sure the relevance of other jury findings.

"The Court: Sustained.

"[Defense counsel:] In terms of the accuracy of your opinions when you find someone meets criteria, do you track the cases where you render an opinion and match it against an ultimate result?

"[Dr. Updegrove:] No. I don't have access to that data.

"[Defense counsel:] Does the DMH?

"[Dr. Updegrove:] Not in a systematic way. So there's no data that would track that.

"[Defense counsel:] Am I correct in stating, then, that you aren't able to tell us—you've told us the percentage, but you don't have any way of telling us how accurate your predictions are?

"[Prosecutor:] Objection. Vague and relevance.

"The Court: Sustained."

Outside of the presence of the jury, defense counsel continued to argue based on statewide statistics from several years: "[A]bout 2 percent of all the evaluated [released prisoners] are ultimately found to meet criteria [as SVP's] . . . just found to meet criteria. I'm not saying [by a] jury. [¶] And I think that when, in an effort to show how neutral they are, the evaluators tell us that they only find, for example, 10 or 15 or 20 percent of

5

their evaluations to meet criteria, they're, in essence, telling us they're overpredicting by at least, statistically speaking, by a power of [*sic*] 5 or 10 and I think the jury ought to know that."

The court disagreed, explaining its decision to sustain the objection: "I think that how many times [the psychologists] have found someone to qualify or not [as an SVP] is relevant to show whether they do have a bias or tendency to frequently find or frequently not find [SVP's]. But what the ultimate conclusions are of a jury or a judge I think has nothing to do with whether [the psychologists] have a bias or not or whether they're right or not. That is up to the jury. [¶] That's like asking how many times has a jury found defendants guilty of rape. It's completely irrelevant. Depends on the circumstances of each case. [¶] Those statistics might be interesting from a societal perspective and the whole putting everything in perspective, but it has nothing to do with this jury's determination regarding the facts of this case."

The second psychologist, Steven Jenkins, Ph.D., concluded Warren qualified as an SVP. Dr. Jenkins testified that since becoming a member of the DMH panel in May 2007, he had performed 225 evaluations, including both initial evaluations and updated evaluations. Eighteen percent of those whose initial evaluation he conducted met the criteria for being SVP's.

B. *Analysis*

To be relevant, evidence must have a tendency in reason to prove or disprove a fact in dispute. (Evid. Code, § 210.) The trial court has wide discretion in admitting evidence. Here, the trial court did not err in excluding the comparative statistics from the

6

psychologists because the comparators are mismatched. Specifically, the two different decision makers—psychologists and jurors—have different responsibilities in SVP cases, and they use different criteria to reach conclusions about different subject matters. To elaborate, the evaluating psychologists are charged with making clinical diagnoses based on a battery of tests, interviews with the prisoner, and a review of police and probation reports, medical records, and so on. By contrast, the jurors' role is to decide whether the prosecutor has proved beyond a reasonable doubt that the subject qualifies as an SVP, based on criteria set forth in the relevant jury instruction. In reaching their decision, the jurors avail themselves of the psychologists' evaluations, and to that extent there is an overlap in findings. But the jurors do not conduct their own clinical evaluation or make a diagnosis. Therefore, the trial court did not err in ruling there is no meaningful way to compare the rates at which the evaluating psychologists determined who qualified for registration as sex offenders with jurors' findings of who qualified as SVP's. Separately, Dr. Updegrove testified that no available data was kept regarding the comparative statistics that defense counsel sought. Lack of such evidence hindered Warren's ability to draw out the comparison he sought to make. Finally, we reject Warren's contention that the court erred in sustaining the prosecutor's objection to further questions about the comparative statistics and denied him an opportunity to show the psychologists were biased. Contrary to Warren's contention, that line of questioning would not have evinced bias on the part of the evaluating psychologists. Rather, the questions sought irrelevant information because the comparators were mismatched.

Under the applicable standard of review stated in *People v. Watson* (1956) 46 Cal.2d 818, 836, we consider whether, after an examination of the entire cause, it appears reasonably probable the defendant would have obtained a more favorable outcome had the court not excluded the challenged testimony. (*People v. Buffington* (2007) 152 Cal.App.4th 446, 456.) We conclude any error was harmless because the record included adequate statistical evidence evincing that the psychologists' rate of positive evaluation for sex offender registration was double, or even triple, the statewide rate of 3 percent of ex prisoners who were determined to meet the criteria for registration as sex offenders. From that data, the jury could find, if it were so inclined, that the testifying psychologists were biased, but instead, the jury still elected to find Warren was an SVP. Any further testimony on this point would have been based on mismatched comparators, and therefore inapplicable to support Warren's attempt to evince bias on the part of the psychologists.

## II.

### *Instructional Error Claim*

Relying on *Kansas v. Crane* (2002) 534 U.S. 407 (*Crane*) and *In re Howard N.* (2005) 35 Cal.4th 117 (*Howard N.*), Warren contends that, under both state and federal law, a person cannot be subjected to civil commitment unless he suffers from a mental disorder making it seriously difficult for him to control his dangerous behavior. Warren thus contends the trial court committed reversible error by denying his request for a pinpoint instruction that explained this legal principle.

A. *Background*

8

The trial court instructed the jury with CALCRIM No. 3454 regarding the People's burden of proof: "The petition alleges that Mr. Andrew Warren is a sexually violent predator. [¶] To prove this allegation, the People must prove beyond a reasonable doubt that: [¶] 1. He has been convicted of committing sexually violent offenses against one or more victims; [¶] This element has been stipulated to by the parties and the jury must accept this fact as proven beyond a reasonable doubt. [¶] 2. He has a diagnosed mental disorder; [¶] 3. As a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior; [¶] AND [¶] 4. It is necessary to keep him in custody in a secure facility to ensure the health and safety of others."

CALCRIM No. 3454 also provided the jury with additional guidance regarding these elements: "The term *diagnosed mental disorder* includes conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior and predispose that person to commit criminal sexual acts to an extent that makes him or her a menace to the health and safety of others. [¶] A person is *likely to engage in sexually violent predatory criminal behavior* if there is a substantial, serious, and well-founded risk that the person will engage in such conduct if released into the community."

At a hearing on jury instructions, the trial court considered and rejected Warren's request to modify CALCRIM No. 3454 to state that the jury was required to find he had serious difficulty in controlling his behavior.

B. *Applicable Law*

9

The California Supreme Court rejected a substantially similar argument to that made by Warren in *People v. Williams* (2003) 31 Cal.4th 757, 774-776 (*Williams*).

The *Williams* petitioner challenged his commitment under the SVPA, arguing the jury in his case did not receive special, specific instruction regarding the need to find serious difficulty in controlling behavior. (*Williams*, *supra*, 31 Cal.4th at pp. 759-760.) The *Williams* court held that specific impairment-of-control instructions are not constitutionally required in California. (*Id*. at pp. 776-777.) The court reasoned the language of the SVPA "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior." (*Id*. at p. 759.)

The *Williams* court also expressly found that "[*Crane*], *supra*, 534 U.S. 407, does not compel us to hold that further lack-of-control instructions or findings are necessary to support a commitment under the SVPA." (*Williams*, *supra*, 31 Cal.4th at pp. 774-775.) In reaching this conclusion, the California Supreme Court emphasized: "[A] judicially imposed requirement of special instructions *augmenting* the clear language of the SVPA would contravene the premise of . . . [*Crane*], *supra*, 534 U.S. 407, that, in this nuanced area, the *Legislature* is the primary arbiter of how the necessary mental-disorder component of its civil commitment scheme shall be defined and described." (*Williams*, *supra*, at p. 774.)

C. *Analysis*

Warren acknowledges *Williams* but argues there was a "problem with the Supreme Court's analysis."  We summarily reject this argument since this court is bound by that case.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Warren further contends the California Supreme Court changed its view expressed in *Williams*, *supra*, 31 Cal.4th 757 when it decided *Howard N.*, *supra*, 35 Cal.4th 117, and, in Warren's words, "the statutory language, merely by its existence, does not necessarily contain within it the necessary information that a jury needs in order to decide whether the defendant has a serious difficulty in controlling his dangerous behavior."  We are not persuaded.

*Howard N.* did not involve a commitment under the SVPA; rather, the defendant challenged his commitment to the California Youth Authority pursuant to section 1800 et seq.  (*Howard N.*, *supra*, 35 Cal.4th at p. 122-123.)  The *Howard N.* court held that, although that statute does not expressly require a finding the person's mental deficiency, abnormality, or disorder causes serious difficulty controlling behavior, it should be interpreted to contain such a requirement in order to preserve its constitutionality.  (*Id*. at pp. 122, 135-136.)  The California Supreme Court repeatedly distinguished the statute at issue in that case from the SVPA.  (*Howard N.*, at pp. 127, 130-131, 136-137.)  The court also affirmed its key holdings in *Williams* that (1) a jury instructed in the language of the SVPA " 'must necessarily understand the need for serious difficulty in controlling behavior' " and (2) " 'separate instructions or findings on that issue are not constitutionally required.' "  (*Howard N.*, at p. 130.)  Thus, contrary to Warren's

11

contention, the California Supreme Court has not modified its views expressed in *Williams*, *supra*, 31 Cal.4th 757.

Finally, Warren attempts to distinguish *Williams* on its facts. The pinpoint instruction the *Williams* defendant requested stated that " 'the diagnosed mental disorder must render the person unable to control his dangerous behavior.' " (*Williams*, *supra*, 31 Cal.4th at p. 763, italics omitted.) As Warren points out, this proposed instruction did not accurately reflect the law, which requires only a "serious difficulty in controlling behavior." (*Crane, supra*, 534 U.S. at p. 413.) Therefore, Warren would limit application of *Williams* to cases in which the alleged SVP failed to request an accurate pinpoint instruction regarding the volitional requirement implicit in the mental disorder element of the SVPA. On this premise, Warren claims his proposed special instruction was an accurate statement of the law and "nothing in *Williams* suggested that it would be error for the trial court to augment the statutory language with the serious difficulty in controlling dangerous behavior language."

Warren notes that Justice Kennard filed a concurring opinion in *Williams* in which she suggested that in future SVPA cases it "would be prudent" to explain to jurors "that defendants cannot be found to be sexually violent predators unless they have serious difficulty in controlling their behavior." (*Williams, supra*, 31 Cal.4th at p. 780 (conc. opn. of Kennard, J.).) However, no other justice joined in that recommendation, and it lacks precedential value.

Moreover, nothing in *Howard N.*, *supra*, 35 Cal.4th 117 abrogates the holding in *Williams*, *supra*, 31 Cal.4th 757. Because no separate instruction on the issue of control

12

is required when the jury is instructed in the statutory language of the SVPA (*Williams* at pp. 776-777), and Warren makes no contention the jury instructions given in his case failed to follow the statutory language of the SVPA, we conclude no error arose from the trial court's failure to give the special instruction requested by Warren's trial counsel.

## III.

### *Due Process, Ex Post Facto, and Double Jeopardy Claims*

In his opening brief, Warren contends the amended SVPA violates due process by "replacing the two-year term with an indeterminate term and shifting the burden of proof onto the defendant to prove his entitlement to release."  He further contends the SVPA violates the constitutional prohibitions against ex post facto laws and double jeopardy. Warren makes the claims to preserve them for federal review, but acknowledges the California Supreme Court has rejected those arguments in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), and we are bound by that case.  (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

## IV.

### *Equal Protection Claim*

Warren contends the indeterminate commitment term in the amended SVPA violates state and federal guarantees of equal protection because SVP's are treated differently from those offenders civilly committed under the mentally disordered offender (MDO) statute (Pen. Code, § 2960 et seq.) and the scheme for those found not guilty by reason of insanity (NGI).  (Pen. Code, § 1620 et seq.)  Specifically, Warren challenges our ruling in *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*), arguing this

13

court "misunderstood and misapplied the strict scrutiny test."[2] (Emphasis and capitalization omitted.) Warren contends this court "put itself in the position where it would find that McKee's equal protection rights had not been violated, notwithstanding the strict scrutiny test, if there was substantial evidence to support any reasonable inference that SVPs are in some way more dangerous than MDOs or NGIs even if the inferences are ones that are unlikely to be true. In effect, this Court applied the rational basis test, not strict scrutiny." Warren argues it is not enough to show that the Legislature or the voters could reasonably believe that SVP's are more dangerous as a class than MDO's and NGI's. The disparate treatment must still be necessary to protect society. Warren further argues that we "basically ignored all the evidence presented by McKee and acted as if all the evidence presented by prosecution was indisputably true."

A. *Applicable Law*

In *McKee I*, the California Supreme Court decided that SVP's are similarly situated to other civilly committed persons, including MDO's and NGI's. The court recognized the amended SVPA was potentially unconstitutional in that similarly situated involuntary civilly committed persons under other statutory commitment regimes are not treated the same way as SVP's with regard to commitment terms and burdens of proof for release. (*McKee I*, *supra*, 47 Cal.4th at p. 1207.) The case was remanded to the trial

---

[2]     We grant Warren's unopposed request to take judicial notice of the trial court's statement of decision following remand proceedings. (Cal. Rules of Court, rule 8.252(a).)

14

court for an evidentiary hearing to allow the People an opportunity to justify the disparate treatment. (*Id*. at pp. 1207-1211.)

During the pendency of this appeal, we decided *McKee II*, and affirmed the trial court's finding that the People had met their burden to justify the disparate treatment of SVP's. We concluded the People had shown that " 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' " (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) "Regardless of the shortcomings or inadequacy of the evidence on actual sexual recidivism rates," the evidence "support[ed], by itself, a reasonable inference or perception that SVP's pose a higher *risk* of sexual reoffending than do MDO's or NGI's." (*Id.* at p. 1342.) The California Supreme Court denied review of *McKee II*, making our ruling final.

B. *Analysis*

We applied the correct standard of review in *McKee II*, where we stated: "[W]e review de novo the trial court's determination whether the Act, as amended by Proposition 83, violates [*McKee*'s] equal protection rights. We independently determine whether the People presented substantial, factual evidence to support a reasonable perception that SVP's pose a unique and/or greater danger to society than do MDO's and NGI's, thereby justifying the disparate treatment of SVP's under the Act." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1338.) Warren criticizes our equal protection analysis in *McKee II*, claiming: "There are three elements that are under attack in this equal

15

protection challenge. First, the indeterminate commitment; second, the shifting of the burden of proof of the Welfare and Institutions Code section 6608 proceeding; and third, the elimination of the right to a jury trial at the Section 6608 hearing. In order for the California SVP Law to withstand equal protection strict scrutiny analysis, each of these three elements must separately be found to be necessary to serve a compelling governmental interest." Our colleagues in Division Three recently rejected this claim. " '[I]n strict scrutiny cases, the government must show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded . . . that Proposition 83 . . . was required to adopt the least restrictive means available.' " (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1380, citing *McKee II*, *supra*, 207 Cal.App.4th at p. 1349.)

Warren fails to explain how the facts in his case are so different from those presented in *McKee II* as to warrant an individualized adjudication of his equal protection claim. His unsupported arguments do not persuade us to revisit our holding; therefore, we decline his request to remand the matter for an evidentiary hearing.

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.