Filed 9/6/13  P. v. Dixon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039083 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 211212) |
| v. | |
| PAUL CURTIS DIXON, | |
| Defendant and Appellant. | |

Appellant Paul Curtis Dixon was committed to the custody of the Department of State Hospitals[1] for an indeterminate term in April 2011, after a jury found him to be a "sexually violent predator" (SVP) within the meaning of the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[2]  We rejected all but one of his challenges to the order of commitment and remanded the case "for the limited purpose of reconsidering [his] equal protection claim in light of [*People v.*] *McKee* [(2010) 47 Cal.4th 1172 (*McKee I*)]" once the proceedings in that case became final.  (*People v. Dixon* (Apr. 11, 2012, H036874) [nonpub. opn.] (*Dixon I*).)  The California Supreme

---

[1]     The SVPA was amended effective June 27, 2012, to reflect that the Department of Mental Health is now the Department of State Hospitals (DSH).  (Stats. 2012, ch. 24, §§ 63, 65, 138-146, pp. 85, 117-124.)

[2]     Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

Court denied Dixon's petition for review. (*Dixon I,* review den. June 20, 2012, S202569.)

Meanwhile, the trial court on remand in *McKee I* held an evidentiary hearing on McKee's equal protection claim, rejected it, and committed him as an SVP. The Fourth District Court of Appeal affirmed, and the California Supreme Court denied review. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1347-1348, review den. Oct. 10, 2012, (*McKee II*).)

With the decision in *McKee II* final, the trial court committed Dixon to the custody of the DSH "as previously ordered." Dixon filed a timely notice of appeal from the trial court's November 9, 2012 order. He contends that the amended SPVA violates his state and federal equal protection rights, and he urges us "not to accept the conclusions of *McKee II*." We affirm.

## I. Background

Since the facts of Dixon's crimes are irrelevant to the issues he raises on appeal, we do not repeat them.

## II. Discussion

### A. The SVPA and Proposition 83

The SVPA provides for the involuntary civil commitment of persons found to be SVP's beyond a reasonable doubt at trial. (*People v. Williams* (2003) 31 Cal.4th 757, 764.) An SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

The SVPA as originally enacted provided for a two-year commitment, renewable for successive terms if the People proved beyond a reasonable doubt at a new trial that

2

the committed person remained an SVP. (Former § 6604; Stats. 1995, ch. 763, § 3.) There were two ways an SVP could obtain review of his or her current mental condition to determine if civil confinement was still necessary. (*People v. Cheek* (2001) 25 Cal.4th 894, 898 (*Cheek*).) Former section 6608 permitted the SVP to petition, without the concurrence of the DSH, for *conditional* release to a community treatment program. (*Cheek*, at p. 898.) Former section 6605, which called for an annual review of a committed SVP's mental status, provided a procedure that, with the concurrence of the DSH, could lead to *unconditional* release. (*Cheek*, at p. 898.)

The SVPA was amended in 2006 by Proposition 83. (*McKee I*, *supra*, 47 Cal.4th at p. 1183.) Among other modifications, "Proposition 83 . . . change[d] an SVP commitment from a two-year term to an indefinite commitment." (*McKee I*, at p. 1186.) Under the amended SVPA, "[a]n SVP can only be released conditionally or unconditionally if the [DSH] authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the [DSH] does not support release." (*McKee I*, at pp. 1187-1188.)

## B. Equal Protection

Dixon claims the amended SVPA violates equal protection because it treats persons committed as SVP's more harshly than persons committed as mentally disordered offenders (MDO's) or found not guilty by reason of insanity (NGI's) are treated. He believes *McKee II* was wrongly decided, and he urges us not to accept its conclusions. We find his arguments unpersuasive.

Both the federal and state Constitutions guarantee the right to equal protection of the laws. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) " " " "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " [Citation.] "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.]' " (*McKee I*, *supra*, 47 Cal.4th at p. 1218.) In *McKee I*, the California Supreme Court held that SVP's, MDO's (Pen. Code, § 2960 et seq.), and NGI's (Pen. Code, § 1026 et seq.) are similarly situated. (*McKee I*, at pp. 1203, 1207.) The court also concluded that McKee's disparate treatment claim required application of the strict scrutiny standard. (*Id.* at pp. 1197-1198.) "Because neither the People nor the court below properly understood this burden," the *McKee I* court decided, the People would have an opportunity to make the appropriate showing on remand. (*Id.* at pp. 1207-1208.) "It must be shown that, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*Id.* at p. 1208.) This could be shown in a variety of ways, the court explained, including by demonstrating that the "inherent nature of the SVP's mental disorder" makes recidivism by SVP's "significantly more likely," or that "SVP's pose a greater risk to a particularly vulnerable class of victims." (*Ibid.*) The court directed the People on remand "to justify Proposition 83's indefinite commitment provisions . . . and demonstrate that they are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate." (*McKee I*, at p. 1210.)

On remand, the trial court conducted a 21-day evidentiary hearing. (See *McKee II*, *supra*, 207 Cal.App.4th at p. 1330.) Experts testified that SVP's have a higher risk of recidivism, that victims of sexual offenses suffer "unique and, in general, greater trauma"

4

than victims of nonsex offenses, and that SVP's "are significantly different from MDO's and NGI's diagnostically and in treatment." (*Id.* at pp. 1340-1347.) Concluding that this justified the disparate treatment of SVP's, the trial court rejected McKee's equal protection claim. (*Id.* at p. 1330.)

Applying the de novo standard of review, the Court of Appeal reviewed the evidence. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1340-1347.) The court concluded that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). (*McKee [I]*, *supra*, 47 Cal.4th at p. 1207.) The People have shown that, 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' (*Id.* at p. 1208.) The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. [Citation.]" (*McKee II*, at p. 1347.)

Dixon contends that the *McKee II* court failed to conduct a proper de novo review. He faults the court for discussing the prosecution's evidence only, "without any discussion of credibility or reliability."

Other courts have rejected this argument, and properly so. (E.g., *People v. McKnight* (2012) 212 Cal.App.4th 860, 864 ["McKnight's claim that the appellate court

5

failed to independently review the trial court's determination is frivolous."]; *People v. Landau* (2013) 214 Cal.App.4th 1, 47-48; *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1378, 1381.)  The *McKee I* court remanded the case to allow the People to meet their burden of proving that the amended SVPA's disparate treatment of SVP's furthered a compelling state interest.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1197-1198.)  After independently reviewing all of the evidence, the *McKee II* court concluded that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand."  (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1339-1348.)  We discern no error.

Dixon next argues that the *McKee II* court misapplied the strict scrutiny test.  He argues that "[i]t was not enough to simply show that the legislature or the voters could reasonably believe that SVPs were more dangerous as a class.  The prosecution had to show that SVPs actually were more dangerous as a class."  We cannot agree.

In remanding the case to the trial court, the high court stated that "the government has not yet shown that the special treatment of SVP's is validly based on the degree of danger *reasonably perceived* as to that group, nor whether it arises from any medical or scientific evidence.  On remand, the government will have an opportunity to justify Proposition 83's indefinite commitment provisions, . . . and demonstrate that they are *based on a reasonable perception* of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate."  (*McKee I*, *supra*, 47 Cal.4th at p. 1210, italics added.)  The *McKee II* court applied the strict scrutiny standard that the high court articulated in *McKee I*.  (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1339-1348.)

Dixon next contends that "[t]he prosecution also had to show that the disparate treatment between SVPs, MDOs and NGIs was necessary to protect society."  Relying on *Bernal v. Fainter* (1984) 467 U.S. 216 (*Bernal*), he argues that "[t]he element of

necessity under the strict scrutiny standard required that the prosecution show that the disparate treatment of SVPs constituted the least restrictive means possible."

McKee made the same argument, and the *McKee II* court rejected it. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1349.) In *Bernal*, the United States Supreme Court stated that "[i]n order to withstand strict scrutiny, the law must advance a compelling state interest by the least restrictive means available." (*Bernal*, *supra*, 467 U.S. at p. 219.) The *McKee II* court described the quoted sentence from *Bernal* as "probable dictum," distinguishing *Bernal* because it involved a suspect class, alienage. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1349.) "We are unaware of any case applying the 'least restrictive means available' requirement to all cases involving disparate treatment of similarly situated classes," the *McKee II* court wrote. (*Ibid*.) "On the contrary, our review of equal protection case law shows the two-part test, as discussed in [*In re*] *Moye* [(1978) 22 Cal.3d 457 (*Moye*)] and *McKee* [*I*], is the prevailing standard. . . . Therefore, in strict scrutiny cases, the government must show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded the electorate that passed Proposition 83 in 2006 was required to adopt the least restrictive means available (e.g., a two-year or other determinate term of civil commitment) in disparately treating SVP's and furthering the compelling state interests of public safety and humane treatment of the mentally disordered." (*McKee II*, at p. 1349.)

We agree with the *McKee II* court's analysis of this issue. We note that *Moye*, like *McKee II* and like this case, involved an equal protection challenge to a civil commitment statute. The high court in *McKee I* specifically instructed the trial court, on remand, to "determine whether the People, *applying the equal protection principles articulated in Moye* and related cases discussed in the [*McKee I* court's] opinion," could demonstrate that imposing a greater burden on SVP's than on MDO's or NGI's to obtain release from

7

confinement was necessary to promote the state's compelling interest in public safety and humane treatment of the mentally ill. (*McKee I*, *supra*, 47 Cal.4th at p. 1208.)

Dixon next contends that the evidence presented in *McKee II* did not support the court's determination that SVP's are more dangerous than MDO's or NGI's. He argues that the *McKee II* court "acknowledged that the prosecution had failed to show that SVPs had a higher sexual recidivism rate than MDOs or NGIs, but nevertheless concluded that the evidence 'supports, by itself, a reasonable inference or perception that SVP's pose a higher *risk* of sexual reoffending than do MDO's or NGI's.' (*McKee II*, *supra*, at p. 1342, [e]mphasis in original.)"

We reject the contention. The People were not required to show that SVP's are *actually* more dangerous as a class. In remanding the case, the *McKee I* court stated that "the government will have an opportunity to justify Proposition 83's indefinite commitment provisions . . . , and demonstrate *that they are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate*. [¶] Moreover, we emphasize that mere disagreement among experts will not suffice to overturn the Proposition 83 amendments. The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial." (*McKee I*, *supra*, 47 Cal.4th at pp. 1210-1211, fn. omitted, italics added.) The *McKee II* court relied on evidence that scores on the Static-99 test, which assesses the risk that a sex offender will commit sex offenses, were significantly higher for SVP's than for MDO's and NGI's. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1340-1342.) It complied with the high court's directions.

Dixon next argues that the *McKee II* court arrived at the conclusion that victims of sexual abuse suffer greater trauma than victims of nonsex offenses "without any evidence regarding the trauma caused by non-sex offenses." We cannot agree. The court relied on evidence that "[s]exual trauma differs qualitatively from other traumas because of its

8

intrusiveness and long-lasting effects," and that "[d]ysfunction, disassociation and avoidance problems after sexual trauma are unique to sexual abuse and are not seen in victims of physical or other types of abuse." (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1342-1343.)

Dixon next contends that there were three aspects of the amended SVPA under attack in *McKee*—indeterminate commitments, the elimination of periodic jury trials, and the shifting of the burden of proof to the committed person to prove that he or she is no longer an SVP. He complains that "[t]he evidence presented in *McKee II* addressed only the issue of indeterminate commitments." This argument has no merit. The *McKee II* court concluded, after independently reviewing all of the evidence, that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1348.) The court's language is indisputably broad enough to encompass all of McKee's equal protection challenges.

### III. Disposition

The November 9, 2012 order committing Dixon to the custody of the DSH for an indeterminate term is affirmed.

9

_____
Mihara, J.

WE CONCUR:


_____
Premo, Acting P. J.


_____
Grover, J.

10